Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| | | |
|---|---|---|
| SUCN. GLADYS CARATTINI SANTIAGO, OSCAR CAMACHO SERRANO Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br>Peticionarios<br><br>v.<br><br>MENNONITE GENERAL HOSPITAL, INC., DR. WILBERTO SANTIAGO REYES Y OTROS<br>Recurridos | TA2026CE00406 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aibonito<br><br>Caso Núm. AI2023CV00417<br><br>Sobre:<br>Impericia Médica |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de junio de 2026.

Comparece la sucesión de la señora Gladys Carattini Santiago compuesta por su viudo, el señor Oscar Camacho Serrano, y sus hijos (la sucesión o peticionaria), a través de recurso de *certiorari*, solicitando que revoquemos una resolución interlocutoria emitida por el Tribunal de Primera Instancia, Sala Superior de Aibonito (TPI), el 3 de marzo de 2026. En el contexto de una causa de acción instada por la sucesión por alegada impericia médica de los recurridos de epígrafe, el foro primario declaró No Ha Lugar la solicitud de los primeros para que se permitiera el testimonio de su perito, emergenciólogo residente del estado de Arizona, a través del sistema de videoconferencia. Es decir, el TPI denegó la petición de la sucesión para que su perito pudiera testificar en el juicio de manera remota, a través de videoconferencia.

Juzga la peticionaria que el tribunal *a quo* abusó de su discreción al no permitir el referido testimonio pericial mediante la alternativa remota y por ello solicita nuestra intervención para autorizarlo. Advierte sobre las

dificultades que comporta para la parte demandante instar una causa de acción por impericia médica en términos del requerimiento de contratación de un perito y el efecto que tiene ello en el acceso a la justicia.

La parte recurrida se opone a tal solicitud, arguyendo que la peticionaria: no puso en posición a este foro intermedio de sopesar posibles costos de trasladar el referido perito a Puerto Rico para testificar; no valoró la ventaja del testimonio en sala cara a cara; no consideró la deferencia que debemos observar hacia el foro primario cuando conduce trámites relativos a la prueba.

Sopesados los asuntos planteados, juzgamos que, en el particular contexto donde discurre la causa de acción por impericia médica, la solución más justiciera en este caso era la de permitir el testimonio del perito de la peticionaria mediante videoconferencia, por lo que expedimos el recurso solicitado y revocamos.

## I. Resumen del tracto procesal

Inicialmente, el 1 de septiembre de 2023, mientras la señora Gladys Carattini Santiago se encontraba con vida, esta y su esposo, el señor Oscar Camacho Serrano, junto a la sociedad legal de bienes gananciales compuesta por ambos, instaron *Demanda* por impericia médica contra el Hospital General Menonita de Aibonito (Hospital), el doctor Wilberto Santiago Reyes (Dr. Santiago Reyes) y otros demandados de nombre desconocido (los recurridos). En comprimida síntesis, en la causa de acción se alegó que, el 25 de septiembre de 2021, la señora Carattini Santiago acudió al Hospital con un severo dolor abdominal, donde fue atendida por el Dr. Santiago Reyes, quien erróneamente le diagnosticó gastroenteritis aguda, suministrándole medicamento y tomándole un CT Scan del abdomen, luego de lo cual fue dada de alta. Sin embargo, el dolor abdominal persistió, de modo que, pasado casi un año de la visita de la señora Carattini Santiago al Hospital, regresó para recibir atención por el

mismo padecimiento. En esta ocasión fue atendida por otro doctor y, hecho otro CT Scan, se detectó un absceso grande en su apéndice y otros nódulos en sus pulmones, apuntando a un cáncer metastizado. Al comparar este segundo CT Scan con el primero, se percataron que el referido absceso ya se mostraba desde el primer CT Scan, de modo que, de no haber sido por la negligencia del Dr. Santiago Reyes al evaluar el primero de dichos estudios, la señora Carattini Santiago hubiese podido recibir el tratamiento de cáncer adecuado para que no se extendiera.

En respuesta, el 16 de febrero de 2024, el Hospital presentó *Contestación a Demanda*. De igual forma, el 22 de febrero de 2024, el Dr. Santiago Reyes presentó *Contestación a la Demanda*.

A los pocos días, y luego de que el TPI atendiera varios asuntos procesales, el 28 de febrero de 2024, el señor Oscar Camacho Serrano presentó una *Moción Informativa y Solicitando Orden*, en la cual dio conocimiento al Tribunal del fallecimiento de la señora Carattini Santiago "por causa del mismo cáncer que fue diagnosticado tardíamente".[1] Por lo cual, informó que se encontraba en proceso de sustituir a la señora Carattini Santiago por su sucesión como parte demandante y de instar la debida demanda enmendada.

En lo que concierne a la controversia ante nuestra consideración, el 29 de febrero de 2024, señor Oscar Camacho Serrano instó una *Moción Informativa*, dando a conocer que había recibido el informe pericial de su perito, el doctor Alexander Toledo (Dr. Toledo), quien es emergenciólogo en el estado de Arizona, y que lo compartió con la representación legal de los recurridos.

Más adelante, y como se había avisado, fue presentada una *Moción Solicitando Permiso para Enmendar Demanda y Expedición de Emplazamiento* y *Primera Demanda Enmendada* el 20 de marzo de 2024

---

[1] *Moción Informativa y Solicitando Orden*, Entrada Núm. 30 de SUMAC-TPI.

peticionando la inclusión de la sucesión como parte demandante. Además, fue añadido Pediatric Pro & Medicine, LLC como parte codemandada, aduciéndose que esta era la entidad jurídica que administraba la sala de emergencia donde la señora Gladys Carattini Santiago fue atendida.

El 10 de enero de 2025 fue celebrada la *Conferencia Inicial* a través de videoconferencia. Según la *Minuta*[2] donde se recogieron las incidencias allí acontecidas, habiendo iniciado el descubrimiento de prueba, el foro primario requirió a las partes que precisaran el estatus de tal proceso. Entre tales asuntos, el TPI manifestó a la peticionaria que presentara el informe pericial para que los peritos de los recurridos pudieran replicar, lo cual obtuvo como respuesta ciertas objeciones al proceso de intercambio de tal informe. En cualquier caso, fue pautada otra fecha en la que se seguirían atendiendo asuntos relacionados.

En armonía, el 16 de mayo de 2025, se celebró una *Vista de Seguimiento*.[3] Según lo revela el contenido de la *Minuta* sobre dicha vista, las partes tuvieron oportunidad de informar sobre el estatus del descubrimiento de la prueba, lo que incluyó asuntos relativos a la deposición que le tomarían los recurridos al perito de la peticionaria, el Dr. Toledo, e información sobre los peritos que estos se disponían a presentar. En definitiva, el Tribunal estableció un calendario con fechas en que las partes debían presentar los informes periciales y coordinar las respectivas deposiciones, finalizaría el descubrimiento de prueba y las partes podrían presentar mociones dispositivas. De igual forma, el foro primario concedió a las partes hasta el 18 de diciembre para presentar de manera conjunta el *Informe de Conferencia con Antelación al Juicio*.

El 15 de agosto de 2025 fue celebrada una *Vista sobre el Estado de los Procedimientos*.[4] Una vez más, las partes tuvieron la oportunidad de

---

[2] *Minuta*, Entrada Núm. 75 de SUMAC-TPI.
[3] *Minuta*, Entrada Núm. 100 de SUMAC-TPI.
[4] *Minuta*, Entrada Núm. 118 de SUMAC-TPI.

informar al Tribunal sobre el cumplimiento del calendario establecido, según descrito en el párrafo que precede, poniendo particular atención al estatus sobre las deposiciones a los peritos.

Llegada la fecha pautada para la celebración del S*tatus Conference,* este fue celebrado por videoconferencia, cuyas incidencias quedaron recogidas en *Minuta.*[5] El Tribunal inició reconociendo el cumplimiento de las partes con el calendario establecido. Entonces, cuando las partes estaban informando sobre los testigos que se disponían a presentar en el juicio y el tiempo estimado que les tomaría presentar la prueba, la peticionaria indicó sobre su perito que "el Dr. Alexander Toledo, es de Arizona, su lenguaje principal es el inglés, por lo que requerirá de un intérprete. **La solicitud que tiene con respecto a su perito es que su testimonio sea por videoconferencia**".[6] (Énfasis provisto). Inquirido por la representación legal de los recurridos sobre por qué los peticionarios solicitaban que su perito testificara mediante videoconferencia, estos contestaron que "su perito vive en Arizona y que los gastos para traerlo son demasiados para un cliente como el suyo, que sería una cuestión de costo y conveniencia. Añade que su perito tiene mucha experiencia testificando por Zoom".[7] Entonces, una vez el TPI expresó que en la Orden de Manejo de Caso había advertido que las vistas se celebrarían de manera presencial, dispuso lo que sigue:

> En cuanto al asunto del perito, se le concede 10 días al licenciado Farmer para persuadir al tribunal de la necesidad que ha manifestado, pero el *ruling* del tribunal es el que ya había mencionado, que tanto la conferencia con antelación al juicio como el juicio en su fondo sería presencial. De presentarse la moción, la parte demandada tiene 10 días para replicar.[8] (Subrayado en el original).

Luego, el 21 de enero de 2026, las partes presentaron el *Informe de Conferencia con Antelación a Juicio*. En su *Informe*, la peticionaria reiteró

---

[5] *Minuta*, Entrada Núm. 125 de SUMAC-TPI.
[6] *Minuta*, Entrada Núm. 125 de SUMAC-TPI, pág. 2.
[7] *Íd.*
[8] *Íd.*

la solicitud para que se autorizara el testimonio de su perito en el juicio mediante videoconferencia.

El 26 de enero de 2026, el TPI notificó una *Orden,* concediéndole un término perentorio de quince (15) días a la peticionaria para que presentara su postura por escrito con relación a la solicitud del testimonio del perito de manera remota.

A los dos días, el 28 de enero de 2026, fue celebrada la *Conferencia con Antelación a Juicio* de manera presencial. La peticionaria reiteró su solicitud sobre permitir el testimonio de su perito mediante videoconferencia. Ante lo cual, el TPI dispuso lo siguiente:

> [S]u determinación es que los Juicios sean celebrados de manera presencial y así lo aclara en los casos desde el principio en la Orden de Manejo de Caso para que las partes puedan hacer los arreglos porque sabe que ello conlleva unos gastos, **principalmente si son casos de impericia médica donde hay que buscar peritos, muchas veces en el extranjero para que vengan a Puerto Rico y hay que pagar el viaje, así como las estadías**. Le gusta que las Conferencias Iniciales, las Vistas Transaccionales, las Conferencias con Antelación al Juicio y los Juicios se vean de manera presencial porque eso ayuda a que las personas se relacionen, puedan discutir sus diferencias y que los abogados puedan ayudar a facilitar el entendimiento de todas las partes.[9] (Énfasis provisto).

El 10 de febrero de 2026, la peticionaria presentó una *Moción para que el Perito de la Parte Demandante Testifique de Manera Remota*[10], detallando su postura sobre lo que el título de la moción adelanta. Llamó la atención al hecho de que en el proceso civil el derecho al careo no tiene el mismo peso que en el ámbito criminal, donde es un derecho constitucional. Entonces, partiendo del requisito en los pleitos por impericia médica que precisa la presentación por la parte promovente de un perito, se debe reconocer que tal exigencia impone de por sí una carga onerosa, pues hay que pagarle al perito de tres mil a seis mil dólares para obtener un informe preliminar. Del informe preliminar indicar que sí medió negligencia, ello da lugar a que se activen otra serie de gastos

---

[9] *Minuta*, Entrada Núm. 132 de SUMAC-TPI, pág. 1.
[10] *Moción para que el Perito de la Parte Demandante Testifique de Manera Remota*, Entrada Núm. 133 de SUMAC-TPI.

(deposiciones, informe pericial, comparecencia al juicio), encareciendo la comparecencia de la parte demandante. El hecho de que vivamos en una isla de ordinario requiere obtener opinión pericial fuera de Puerto Rico, lo que añade gastos a la ecuación, como pasajes de avión, estadías y dietas que suman en exceso de quince mil dólares. En definitiva, no permitir la declaración remota de este perito supondría entorpecer el acceso a la justicia como principio esencial de nuestro ordenamiento.

Ante lo cual, el Hospital instó una *Oposición a Moción para que el Perito de la Parte Demandante Testifique de Manera Remota*, a la que se unieron los demás recurridos. Apuntó lo siguiente: el testimonio presencial seguía siendo el mecanismo que mejor salvaguardaba la confiabilidad del testimonio, siendo el *demeanor* herramienta importante para determinar credibilidad; no se esgrimieron circunstancias extraordinarias justificantes de la petición; aunque se reconocen los costos que acarrea el testimonio pericial, ello no puede ir por encima del derecho a un contrainterrogatorio efectivo. En la alternativa de que el Tribunal acogiera la solicitud del testimonio pericial remoto, solicitó medidas estrictas para garantizar su confiabilidad.

Es así como, el 3 de marzo de 2026, el TPI emitió la Resolución cuya revocación nos solicita la sucesión, mediante la cual declaró *No Ha Lugar* la solicitud para que fuera autorizado el testimonio remoto del perito Dr. Toledo. Al así determinar, el foro recurrido plasmó la siguiente expresión:

> Las alegadas causas presentadas para justificar la solicitud (costos económicos) versus el restringir el derecho a la confrontación de las partes demandadas y la oportunidad al tribunal de observar el "demenor" [*sic*] del perito, sin considerar los problemas de conectividad con las videoconferencias que en ocasiones ocurren y la dilación que representan en la cargada agenda del tribunal, sostienen nuestra determinación. De prevalecer en su acción la regla 44.1(a) de procedimiento civil vigentes, dispone que los gastos en la tramitación de su caso podrán ser reclamados.[11]

---

[11] *Determinación [133, 139, 140 y 141] de SUMAC*, Entrada Núm. 143 de SUMAC-TPI, pág 1.

En desacuerdo, la sucesión acudió ante nosotros, mediante recurso de *certiorari*, señalando la comisión del siguiente error:

> Erró e incurrió en abuso de discreción el TPI al no hacer un balance justo y razonable de intereses y dejar de permitir que, dentro de su sala inteligente, el perito de la parte demandante testifique en juicio de manera remota.

Por su parte, Pediatric Pro & Medicine, LLC también compareció ante nosotros, mediante una *Oposición a Solicitud de Certiorari*. Argumentó que:

> [n]o surge de los escritos de la parte peticionaria ningún otro criterio que no sea económico, al especular lo que les costaría la comparecencia presencial del perito al juicio en el Tribunal de Aibonito. Nada produjeron ni alegaron que establezca que el Dr. Toledo está imposibilitado de viajar desde Arizona a Puerto Rico, solamente que no pueden pagar lo que cuesta lo pactado con su perito. Sin embargo [*sic*] no han dicho cuánto cuesta o por qué ahora no pueden pagar lo que conocen desde que lo contrataron.[12]

En igual fecha, el Dr. Santiago Reyes y el Hospital presentaron sus respectivos escritos en oposición, adoptando los argumentos esbozados por Pediatric Pro & Medicine, LLC.

## II. Exposición de Derecho

a.

El auto de *certiorari* es el vehículo procesal discrecional mediante el cual un tribunal de mayor jerarquía puede revisar las determinaciones de un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016); *García v. Padró*, 165 DPR 324, 334-335 (2005). La expedición de un auto de *certiorari* descansa en la sana discreción del tribunal. *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 729. Como ha señalado el Tribunal Supremo, el auto de *certiorari* se distingue por "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción no es irrestricta, sino que se debe ejercer dentro

---

[12] *Oposición a Solicitud de Certiorari*, Entrada Núm. 3 de SUMAC (TA), pág. 8.

del marco de la razonabilidad. *García v. Asociación*, 165 DPR 311, 321 (2005).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece las circunstancias bajo las cuales el Tribunal de Apelaciones está facultado para ejercer su discreción y considerar un *certiorari*. Allí se pauta que, como norma general, los foros apelativos podrán revisar determinaciones bajo las Reglas 56 (sobre remedios provisionales) o 57 (sobre *injunctions*) de las Reglas de Procedimiento Civil y cuando se recurre de una denegación de una moción dispositiva. En adición, la Regla 52.1 establece unas circunstancias excepcionales que también habilitan la intervención del foro revisor, entre las cuales está

> cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales. Regla 52.1 de Procedimiento Civil, *supra*.

En la determinación sobre ejercer nuestra discreción para expedir el recurso de *certiorari*, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC*, supra, pág. 730.

b.

Nuestro Tribunal Supremo ha reiterado que los foros apelativos no interferiremos con las facultades discrecionales de los foros primarios, exceptuando las circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción; o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Iván Rivera Gómez v.*

*Arcos Dorados Puerto Rico, Inc.*, 212 DPR 194, 210-211 (2023); *Cruz Flores et al. v. Hosp. Ryder et al.*, supra; *Rivera y otros v. Bco. Popular*, 210 DPR 465 (2022); *Lluch v. España Service Sta.*, supra, pág. 745. Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Lluch v. España Service Sta.*, 117 DPR 729 (1986).

La discreción judicial ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Iván Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, supra; *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657–658 (1997), citando a *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964). El ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad. *Iván Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.,* supra; *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 272 (2021). Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del Derecho. *Iván Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, supra; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013).

Un tribunal abusa de su discreción

cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).

**III. Aplicación del Derecho a los hechos**

Al tribunal *a quo* denegar la solicitud de la parte peticionaria para permitir el testimonio pericial en el juicio de manera remota, sopesó los costos que le supondría a dicha parte traer el testigo a Puerto Rico a declarar, siendo el perito de Arizona, *vis a vis* el derecho a la confrontación de las partes demandadas y la oportunidad para el Tribunal de observar

el *demeanor* del perito mientras testifica. Es decir, que, puesto en balanza, pesó más en la conciencia judicial del juzgador primario el referido derecho a la confrontación y la posibilidad de observar el *demeanor* que el encarecimiento del litigio por los gastos relativos a traer a dicho perito a testificar a Puerto Rico, en lugar de permitir el testimonio remoto. No coincidimos.

Comenzaremos por examinar qué ha establecido la jurisprudencia sobre el derecho a la confrontación y el *demeanor*, para entonces aquilatar el argumento sobre los costos del perito en una causa de acción por impericia médica.

Como se sabe, son aspectos fundamentales del derecho a la confrontación el derecho a contrainterrogar a los testigos adversos y que ello ocurra *cara a cara. Pueblo v. Santos Santos,* 185 DPR 709 (2012).

Al distinguir el derecho a la confrontación en el proceso criminal versus el civil, nuestro Tribunal Supremo ha indicado que "el derecho que tienen las partes de confrontarse con la prueba en su contra, lo cual si bien no nace en este caso del derecho constitucional al careo que tienen los acusados de delito[13], puesto que este es un procedimiento de naturaleza civil, **el mismo forma parte del debido proceso de ley procesal que tiene cualquier parte en un procedimiento judicial**". (Énfasis provisto). *P.N.P. v. Rodríguez Estrada,* 123 DPR 1, 14 (1988). Con precisión, "el derecho constitucional a un debido proceso de ley exige concesión de vista, previa oportuna y adecuada notificación, derecho a ser oído confrontándose con los testigos de cargo y a presentar prueba y argumentos en su defensa". *Ortiz Cruz v. Junta Hípica,* 101 DPR 791, 795 (1973).

---

[13] Véase el Art. II, Sec. 11 de nuestra Constitución y la Enmienda Sexta de la Constitución federal, LPRA, Tomo 1, respectivamente.

Hemos reconocido que el derecho a la confrontación opera en el proceso civil por virtud del debido proceso ley, no obstante, también se debe admitir que el derecho a la confrontación "no es absoluto"; en este sentido, el derecho a carearse con los testigos de cargo "no es tajante y permite excepciones". *Pueblo v. Cruz Rosario*, 204 DPR 1040 (2020). En la misma tónica, el Tribunal Supremo ha manifestado que tal derecho debe ceder ocasionalmente "ante consideraciones de política pública y las necesidades del caso". *Pueblo v. Cruz Rosario*, supra. A fin de cuentas, para que se concrete el derecho a la confrontación, **el debido proceso de ley lo que exige es que**, cuando sea posible, **se ponga a disposición del acusado** (la parte contra quien se ofrece testimonio en el proceso civil) **las herramientas para atacar la credibilidad de los testigos**. (Énfasis provisto). *Íd.* Lo cierto es que, afortunadamente, nuestro ordenamiento sí dispone de tales herramientas para prevenir que se lesione el derecho al careo de los testigos a través de la videoconferencia.

Según es sabido, la videoconferencia es un método que sustituye la comparecencia personal del participante por una comparecencia a distancia, bidireccional y simultánea. *Pueblo v. Santiago Cruz*, 205 DPR 7 (2020). En esta misma Opinión, el Tribunal Supremo afirmó que "a fin de asegurar que las videoconferencias cumplan con los requisitos del debido proceso, la Rama Judicial ha hecho inversiones significativas para mejorar su tecnología". *Íd.* Es de ver que, en la situación fáctica planteada en *Pueblo v. Santiago Cruz*, supra, el Tribunal Supremo no apreció lesión al debido proceso de ley ni a una representación legal adecuada al interrogar vía videoconferencia.

Véase que, aun cuando hemos dicho que nuestro Tribunal Supremo ha reconocido el derecho a la confrontación en el proceso civil por vías del debido proceso de ley, lo cierto es que no pasa por inadvertido que ese mismo foro ha admitido el interrogatorio a través del sistema de

videoconferencia en el proceso criminal por observar que su uso no infringe el derecho a la confrontación, la representación alegal adecuada y el propio debido proceso de ley.

Estrechamente relacionado, si se concibe el *demeanor* como "la conducta no verbal que exterioriza un testigo mientras declara", lo cierto es que "el mecanismo de videoconferenecia permite que un testigo pueda declarar, en tiempo real, sin que tenga que estar físicamente en la misma sala donde se celebra el juicio" y, aunque el testigo no esté presente de manera física, este se encontrará virtualmente presente a través de la tecnología que faculta sus interacciones con el resto de los componentes de la sala. *Pueblo v. Cruz Rosario*, supra.

En definitiva, la ausencia en sala del perito de la parte peticionaria el día del juicio no supondría necesariamente lesión al derecho de los recurridos de confrontarlo ni tampoco el Tribunal estaría desprovisto de examinar su *demeanor* de proveerse la herramienta necesaria para que testifique, de modo que pueda ser contrainterrogado, a la vez que el juzgador observe su conducta no verbal exteriorizada.

Entonces, en lo relativo al costo que supone la inclusión de un perito en el contexto de la causa de acción por impericia médica, como mínimo se debe admitir que su requerimiento por la jurisprudencia encarece el trámite judicial ordinario. Nos referimos a la expresión del Tribunal Supremo al decir que, en cuanto a la responsabilidad de los médicos en el desempeño de sus funciones profesionales, "**el demandante deberá establecer mediante prueba pericial cuáles son los requisitos de cuidado y conocimiento científico requeridos por la profesión en el tratamiento de sus pacientes**". (Énfasis provisto). *López v. Dr. Cañizares*, 163 DPR 119, 133 (2004). Por tanto, juzgamos que, allí donde sea factible, se deben proveer avenidas para evitar que un mayor encarecimiento del

proceso termine estrechando aún más la posibilidad de instar una causa de acción tal.

Sobre los costos en que incurriría la parte peticionaria para traer a testificar a su perito de manera presencial al juicio, la parte recurrida ha insistido en que no han sido precisados, *ergo,* la parte promovente del testimonio remoto no nos puso en posición de interferir con la deferencia que debemos al foro primario al obligar la comparecencia presencial del testigo. Muy al contrario, juzgamos que distintas manifestaciones de las partes y del propio Tribunal, que precedieron a la denegatoria del testimonio pericial remoto, partieron de la premisa de que el testimonio presencial, en efecto, acarrearía mayores costos.

Según precisamos en el recuento procesal, desde al menos el *Status Conference,* la parte peticionaria advirtió que su perito residía en el estado de Artizona, por lo que traerlo desde dicho estado a testificar en el juicio supondría incurrir en gastos adicionales. En la *Conferencia con Antelación a Juicio* celebrada el 28 de enero de 2026, el propio Tribunal reconoció que en los "casos de impericia médica [...] hay que buscar peritos, muchas veces en el extranjero para que vengan a Puerto Rico y hay que pagar el viaje, así como las estadías".[14] En la *Moción para que el Perito de la Parte Demandante Testifique de Manera Remota,* la parte peticionaria expresamente plasmó que el requerimiento del testimonio pericial de su perito sería una carga onerosa, pues hay que pagarle al perito de tres mil a seis mil dólares para obtener un informe preliminar. Del informe preliminar indicar que sí medió negligencia, ello da lugar a que se activen otra serie de gastos (deposiciones, informe pericial, comparecencia al juicio), encareciendo la comparecencia de la parte demandante. El hecho de que vivamos en una isla de ordinario requiere obtener opinión pericial

---

[14] *Minuta,* Entrada Núm. 132 de SUMAC-TPI, pág. 1.

fuera de Puerto Rico, lo que añade gastos a la ecuación, como pasajes de avión, estadías y dietas que suman en exceso de quince mil dólares.[15]

Sobre lo mismo, la propia parte recurrida en su *Oposición a Moción para que el Perito de la Parte Demandante Testifique de Manera Remota*[16] reconoció los costos que acarrea el testimonio pericial: "si bien **el Hospital** Menonita de Aibonito **reconoce la realidad de los costos asociados a litigios de impericia médica**, estos no constituyen por sí solos justificación suficiente para limitar o alterar las garantías de ley fundamentales"[17]. (Énfasis provisto). La oposición fundamental de la parte recurrida al testimonio remoto tiene que ver con el derecho a confrontar cara a cara a dicho testigo.

Con franqueza, nos resulta difícil no reconocer los costos que le suponen al promovente de una causa de acción por impericia médica: identificar a un perito que esté dispuesto a testificar contra uno de los miembros de la clase médica del país, que redacte un informe, que se someta a deposiciones y que, además, viaje a Puerto Rico y se hospede para testificar en el juicio. Sin duda que el derecho a la confrontación ha sido reconocido como parte del debido proceso de ley en los procesos civiles, pero ni siquiera en el contexto criminal tal derecho es absoluto. Lo cierto es que el testimonio pericial en este tipo de casos bien puede ser servido a través de videoconferencia sin que ello comporte lesión al derecho de los recurridos a un efectivo contrainterrogatorio o que el Tribunal deje de beneficiarse del estudio del *demeanor* del perito. Es decir, el sistema de videoconferencia permite que el juzgador pueda escuchar y ver con claridad al perito mientras declara, a la vez que habilita su cabal contrainterrogatorio por la parte contraria.

---

[15] *Moción para que el Perito de la Parte Demandante Testifique de Manera Remota,* Entrada Núm. 133 de SUMAC-TPI.

[16] *Oposición a Moción para que el Perito de la Parte Demandante Testifique de Manera Remota,* Entrada Núm. 139 de SUMAC-TPI.

[17] *Oposición a Moción para que el Perito de la Parte Demandante Testifique de Manera Remota,* Entrada Núm. 139 de SUMAC-TPI, pág. 3.

Puesto que el ejercicio de la discreción judicial encuentra vinculación con el concepto de la razonabilidad, no juzgamos razonable la exigencia en este caso del testimonio pericial presencial en el juicio cuando se cuenta con herramientas que permiten el testimonio de manera remota sin lesionar el debido proceso de ley de los recurridos ni la facultad del juzgador de los hechos de apreciar el *demeanor*.

**IV. Parte dispositiva**

Por los fundamentos expuestos, expedimos el recurso de *certiorari* solicitado y revocamos la resolución recurrida. A tenor, se devuelve el asunto al TPI para la continuación de los procedimientos de conformidad a lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones